No. ——

First Circuit

BIAS v. BUCK

(May 4, 1926, Opinion and Decree)

*(Sylabus by the Editor.)*

1. Louisiana Digest—Master and Servant —Par. 159, 160 (j).

Where the evidence in a workmen's compensation case clearly shows that the injured employee lost the sight of an eye because of an accident in the course of his employment he will be given compensation under Section 8, Subsection 1 (d) of Act 20 of 1914.

(The recent amendment of Sec. 8 of Act 20 of 1914 is Act 216 of 1924.)

Appeal from the Parish of Calcasieu, Hon. Jerry Cline, Judge.

Action by O'Neil Bias against H. E. Buck. There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Cline and Plauche, of Lake Charles, attorneys for plaintiff, appellee.

Harry Sellers, attorney for defendant, appellant.

MOUTON, J.   This is a suit in damages under the Workmen's Compensation Act.

Plaintiff claims that on May 23, 1923, while in the service of defendant's brick manufacturing company he suffered an injury to his left eye which completely destroyed his vision therein, and in fact caused the total loss of that eye as an organ of sight. The defense is substantially that if plaintiff lost the sight of his left eye that it was due to an atrophy of the optic nerve which had been of long standing and was not the result of any accident, while plaintiff was in the employ of defendant. The district judge held that it was, and rendered judgment for plaintiff for the amount claimed.

Defendant appeals.

In describing the way in which the accident occurred, plaintiff said while performing the work he was engaged in, he struck a beam with a brick; that the corner flew off, struck him in the eye, and that a piece got into his eye. The record shows he immediately complained of the injury, and soon after consulted physicians to obtain relief from his sufferings which resulted therefrom. Prior to the date of the accident of which plaintiff complains, his left eye was perfectly sound, and of this there can be no question. He was laid in bed for over twelve weeks after the injury, and was during that time

under treatment of a physician for his eye. Plaintiff was attended to soon after he received the injury by Dr. Illes, an eye specialist of the City of Lake Charles. Dr. Illes testifies that he examined plaintiff's eye on May 24th, which the record shows was the day after the alleged accident. His eye was then swollen and inflamed. Dr. Illes says if the inflammation was intense enough to extend into the ball of the eye, atrophy of the optic nerve could result. Further on in his testimony, he said that the ordinary case of eye troubles the blindness of which plaintiff complained could have been caused from the injury for which he treated him.

Plaintiff's eye was also examined by Dr. Gerard, a noted specialist of the City of Lafayette. He, however, saw plaintiff several months after the accident. He was not in as good a position to ascertain the cause of the loss of sight of the plaintiff as was Dr. Illes who saw plaintiff and treated him during a period of three months, immediately following the injury. This was noted by the district judge, and properly.

Dr. Gerard in the course of his testimony, first stated, that the atrophy of the optic nerve was due mainly to a general physical condition. He thereafter, however, made it very clear that it could be caused by an inflammation of the retina, the choroid or of the axis posterior of the eye ball. Dr. Illes said an inflammation of every structure of the eye ball would cause atrophy of the optic nerve. He said he could not say that the inflammation had gone inside of the eye ball, but that plaintiff had "that kind of inflammation".

We therefore find as did the district judge that there is no material conflict between the testimony of the two specialists. We are convinced that the injury to plaintiff's eye was caused solely by the accident, and that as a result he has completely lost his sight in that eye for which he is justly entitled to the judgment rendered in his favor, and which is therefore affirmed.